UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HAVA AND JAMES ZLOTNIK,

    Plaintiffs,

    v.

U.S. BANCORP, a Delaware Corporation f/k/a DOWNEY SAVINGS AND LOAN CORPORATION; INVESTORS TRUST MORTGAGE AND INVESTMENT COMPANY, INC., a California corporation; and DOES 1 through 50, inclusive,

    Defendants.
_____/

No. C 09-3855 PJH

**ORDER GRANTING MOTION TO DISMISS**

    The motion of defendant U.S. Bank, National Association ("U.S. Bank" or "defendant")[1] to dismiss plaintiffs' second amended complaint ("SAC") came on for hearing on December 16, 2009. Plaintiffs Hava and James Zlotnik ("plaintiffs") appeared through Alan Sherwood, specially appearing on behalf of plaintiffs' counsel, Stephen P. Collette. Defendant U.S. Bank appeared through its counsel, Molly R. Newland. For the reasons that follow, the court GRANTS defendant's motion to dismiss.

**BACKGROUND**

    This action arises out of the initiation of non-judicial foreclosure proceedings on real property purchased by plaintiffs. Plaintiffs Hava and James Zlotnik ("plaintiffs") are residents of Marin County and the owners of real property located at 248 Montego Key, Novato, CA 94949 ("the property"). See SAC ¶¶ 1, 5. On June 30, 2005, plaintiffs refinanced a loan on

---

[1] U.S. Bank is the successor in interest to the Federal Deposit Insurance Corporation as receiver for Downey Savings and Loan Association, F.A., and was erroneously named as U.S. Bancorp. U.S. Bank's Response in Support of Motion to Dismiss, 2.

1  the property.  The transaction was brokered by defendant Investors Trust Mortgage and
2  Investment Company, Inc. ("Investors Trust"), and drafted according to the underwriting
3  guidelines of defendant Downey Savings and Loan Association, F.A. ("Downey Savings").
4  Id. ¶ 5.  The loan amount of $626,250 was secured by a Deed of Trust against the property.
5  Id. ¶ 6.

6  Plaintiffs allege that defendant U.S. Bank engaged in unfair and fraudulent business
7  practices by misrepresenting and deceptively advertising information regarding plaintiffs'
8  loan.  Consequently, plaintiffs seek injunctive relief, disgorgement or restitution, attorney's
9  fees, and costs.

10  On April 22, 2009, plaintiffs filed this action in Marin County Superior Court.  Plaintiffs
11  filed a first amended complaint ("FAC") on July 2, 2009.  The action was removed to this
12  court on August 21, 2009.  U.S. Bank filed a motion to dismiss the FAC on August 26, 2009.
13  Instead of filing an opposition, and without seeking leave to amend, plaintiffs filed the SAC
14  on September 30, 2009, alleging a single cause of action for unfair business practices under
15  California Business and Professions Code section 17200.  On October 16, 2009, the court
16  granted U.S. Bank's first motion to dismiss and declined to strike the SAC.  On October 23,
17  2009, U.S. Bank filed the instant motion to dismiss the SAC, or in the alternative, for a more
18  definite statement.  Plaintiffs filed their opposition brief on November 15, 2009, and on
19  December 2, 2009, U.S. Bank submitted its reply.

20  **DISCUSSION**

21  A.    Legal Standard

22  A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims
23  alleged in the complaint.  Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003).
24  Review is limited to the contents of the complaint.  Allarcom Pay Television, Ltd. v. Gen.
25  Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995).  To survive a motion to dismiss for
26  failure to state a claim, a complaint generally must satisfy only the minimal notice pleading
27  requirements of Federal Rule of Civil Procedure 8.  Rule 8(a)(2) requires only that the
28  complaint include a "short and plain statement of the claim showing that the pleader is

entitled to relief." Fed. R. Civ. P. 8(a)(2).

Specific facts are unnecessary – the statement need only give the defendant "fair notice of the claim and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). All allegations of material fact are taken as true. Id. at 94. However, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations and quotations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. See id. at 558-59. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (9th Cir. 2009).[2]

In addition, in actions alleging fraud, "the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Under Rule 9(b), the complaint must allege specific facts regarding the fraudulent activity, such as the time, date, place, and content of the alleged fraudulent representation, how or why the representation was false or misleading, and in some cases, the identity of the person engaged in the fraud. In re GlenFed Sec. Litig., 42 F.3d 1541, 1547-49 (9th Cir. 1994).

Further, in ruling on a motion to dismiss for failure to state a claim, "a court may generally consider only allegations contained in the pleadings, exhibits attached to the

---

[2] In its motion, U.S. Bank incorrectly cites Conley v. Gibson, 355 U.S. 41, 45-46 (1957) as setting forth the standard. The correct standard, however, is set forth in Erickson, 551 U.S. at 93-94, and Twombly, 550 U.S. at 555-56, as discussed above. Twombly disapproved the "no set of facts" language in Conley. Conley had stated "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. at 45-46. Twombly decided that "this famous observation has earned its retirement. The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard." 550 U.S. at 563.

3

1  complaint, and matters properly subject to judicial notice." Swartz v. KPMG LLP, 476 F.3d
2  756, 763 (9th Cir. 2007).  Accordingly, a court may consider matters of public record on a
3  motion to dismiss, and in doing so "does not convert a Rule 12(b)(6) motion to one for
4  summary judgment." Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir.
5  1986), *abrogated on other grounds* by Astoria Federal Savings and Loan Ass'n v. Solimino,
6  501 U.S. 104 (1991).

7  B.     Motion to Dismiss

8       **1.     TILA Versus the UCL**

9       The parties dispute whether plaintiffs' claim, at its core, constitutes a Truth in Lending
10 Act ("TILA") or California Unfair Competition Law ("UCL") claim.  Plaintiffs' UCL cause of
11 action alleges that defendant violated § 17200 by engaging in unlawful, unfair, fraudulent
12 and/or deceptive business practices.  Specifically, plaintiffs' claim is based upon their
13 allegations that U.S. Bank made misrepresentations to borrowers, including plaintiffs, with
14 respect to (1) "the later increase in the monthly payments that would result at the expiration
15 of the 'teaser' rate"; and (2) the fact that borrowers' "prepayment penalty would be waived if
16 they refinanced with U.S. [Bank] when in fact U.S. [Bank] was unable to waive the terms of
17 most loans." SAC ¶ 11.  In addition, the SAC alleges that as a result of defendants'
18 "disclosure failures, Plaintiffs were unable to understand how their loan actually functioned."
19 SAC ¶ 17.   In light of the parties' arguments, the court addresses plaintiffs' claim with
20 respect to both TILA and the UCL.

21              a.      Plaintiffs' Claim Analyzed Under TILA

22       The Ninth Circuit has disapproved of situations similar to the instant case, where a
23 plaintiff attempts to avoid TILA's statute of limitations by alleging violations in terms of the
24 UCL.  In Silvas v. E*Trade Mortgage Company, the appellants alleged UCL claims
25 predicated upon misrepresentations defendant made during the refinancing process.  514
26 F.3d 1001, 1003 (9th Cir. 2008).  "Although both UCL claims were predicated exclusively on
27 a violation of TILA, Appellants did not assert a claim under TILA itself." Id.  Ultimately, the
28 Ninth Circuit found that HOLA preempted plaintiffs' UCL claims, as the claims fell squarely

4

within the list of state laws HOLA explicitly preempts. Id. at 1005. Accordingly, the court held that the UCL, "as applied in this case, is preempted by federal law." Id. at 1006.

In footnote three, the court criticized the appellants' attempt to avoid TILA's statute of limitations:

> In this case, it is clear that the UCL has a much longer statute of limitations than does TILA. Compare Cal. Bus. & Prof. Code § 17208 (providing a four-year statute of limitations period) with 15 U.S.C. § 1640(e) (providing a one-year limitations period for TILA claims). It is also clear that Appellants seek to take advantage of the longer statute of limitations under UCL to remedy TILA violations, because without the extended limitations period their claims would be barred. An attempt by Appellants to go outside the congressionally enacted limitation period of TILA is an attempt to enforce a state regulation in an area expressly preempted by federal law. Id., n. 3.

TILA does, however, allow state law to supplement its enforcement scheme. The statute states that TILA does "not annul, alter, or affect the laws of any State relating to the disclosure of information in connection with credit transactions, except to the extent that those laws are inconsistent with the provisions of this subchapter and then only to the extent of the inconsistency." 15 U.S.C. § 1610(a)(1). However, as applied in this case, the UCL conflicts with TILA, as it allows plaintiffs to seek relief for TILA violations, after TILA's statute of limitations has expired. Plaintiffs refinanced their loan on June 30, 2005, and filed their initial complaint on April 22, 2009, after both the one-year statutory period for damages and the three-year period for rescission had lapsed. Based on this inconsistency and the Ninth Circuit's disapproval of such a result, the court finds that plaintiffs' claim is preempted by TILA, and is therefore time-barred.

    b. Plaintiffs' Claim Analyzed Under the UCL

Turning to section 17200, while the SAC fails to state a claim under the unlawful and fraudulent prongs of the UCL, it sufficiently states a claim pursuant to the unfair prong. To state a claim for unfair competition pursuant to section 17200, a plaintiff must allege that a defendant engaged in an "unlawful, unfair, or fraudulent business act or practice" or in "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Because the statute is written in the disjunctive, it applies separately to business practices

that are (1) unlawful, (2) unfair, or (3) fraudulent.  See Pastoria v. Nationwide Ins., 112 Cal.App.4th 1490, 1496 (2003).  The purpose of the UCL is "to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." Kasky v. Nike, Inc., 27 Cal.4th 939, 949 (2002).

The UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law.  Chabner v. United Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000).  Violation of almost any federal, state, or local law may serve as the basis for a UCL claim.  Saunders v. Superior Court, 27 Cal.App.4th 832, 838-39 (1994).  Where a plaintiff cannot state a claim under the "borrowed" law, she cannot state a UCL claim either.  See, e.g., Smith v. State Farm Mutual Automobile Ins. Co., 93 Cal.App.4th 700, 718 (2001); Ingels v. Westwood One Broadcasting Services, Inc., 129 Cal.App.4th 1050, 1060 (2005) ("A defendant cannot be liable under § 17200 for committing unlawful business practices without having violated another law.") (quotation marks omitted).

To the extent that plaintiffs' § 17200 claim is predicated on U.S. Bank's purported violations of TILA and its regulations, the claim is not viable.  As discussed above, any underlying TILA claims are time-barred, and thus plaintiffs' UCL claim based on TILA violations likewise fails.  Without the predicate TILA violation, there can be no § 17200 claim for unlawful business practices.  See Rubio v. Capital One Bank (USA), 572 F.Supp.2d 1157, 1168 (C.D. Cal. 2008)  (since plaintiff's TILA claim failed, plaintiff's UCL claim predicated on TILA likewise failed).  As plaintiffs' claim does not allege a violation of any underlying law, the court finds that plaintiffs' SAC fails to state a claim for an unlawful business practice under the UCL.

Additionally, to the extent that plaintiffs' § 17200 claim is predicated on the "fraudulent" prong of the UCL,[3] based on conduct other than the alleged TILA violations, it is

---

[3] Based on the allegations in the SAC, one of the primary underlying wrongs that plaintiffs are alleging is based on fraud.  Indeed, according to plaintiffs, "by the fraudulent, deceptive, unfair, and other wrongful conduct as herein alleged, said Defendants have violated California Business and Professions Code § 17200 et seq. by consummating an unlawful,

6

dismissed for failure to state a claim.  Although fraud is not an essential element of a claim under § 17200, allegations of fraudulent conduct must nevertheless satisfy the heightened pleading requirements of Rule 9(b).  See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103-05 (9th Cir. 2003) (the heightened pleading standards of Rule 9(b) apply to allegations of fraud and allegations that sound in fraud, including false misrepresentations); see also Meridian Project Sys., Inc. v. Hardin Constr. Co., LLC, 404 F.Supp.2d 1214, 1219 (E.D. Cal. 2005) ("It is well settled in the Ninth Circuit that misrepresentation claims are a species of fraud, which must meet Rule 9(b)'s particularity requirement."); Neilson v. Union Bank of Cal., N.A., 290 F.Supp.2d 1101, 1141 (C.D. Cal. 2003) ("It is well-established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements.").

     Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud must be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong.  Vess, 317 F.3d at 1106.  "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." Id. " '[A] plaintiff must set forth *more* than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false.'" Id. (emphasis in original).

     The purpose of Rule 9(b) is to ensure that defendants accused of the conduct specified have adequate notice of what they are alleged to have done, so that they may defend against the accusations.  Concha v. London, 62 F.3d 1493, 1502 (9th Cir. 1995). "Without such specificity, defendants in these cases would be put to an unfair advantage, since at the early stages of the proceedings they could do no more than generally deny any wrongdoing."  Id. (citing Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985)).

     Plaintiffs' § 17200 claim fails to satisfy the heightened pleading requirements of Rule

---

unfair, and fraudulent business practice, designed to deprive Plaintiffs of money and/or property."  SAC ¶ 18.

7

9(b) with respect to the "fraudulent" prong of the UCL. Although plaintiffs do plead with the requisite particularity the specific representations that are attributable to U.S. Bank, see SAC ¶ 10, plaintiffs fail to identify the U.S. Bank employee who made the representations, his or her authority to speak, and when the representations were said or written. In short, plaintiffs fail to sufficiently allege the circumstances constituting the alleged misrepresentations, and have thus failed to give U.S. Bank adequate notice of the particular misconduct so that U.S. Bank can defend against the charge.

However, turning to the "unfair" prong of the UCL, the SAC states a viable cause of action. An act is "unfair" under the UCL if the act "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law." Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal.4th 163, 187 (1999). The California Supreme Court has directed courts to look to the jurisprudence arising under section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, for guidance in applying the unfair prong of the UCL. Davis v. Ford Motor Credit Co., 101 Cal.Rptr.3d 697, 709 (2009) (citing Cel-Tech Communications, Inc., 20 Cal.4th at 185). The factors that define unfairness under the section 5 test are: (1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to the consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided. Camacho v. Automobile Club of Southern California, 142 Cal.App.4th 1394, 1403 (2006).

In this case, plaintiffs allege that defendant's unfair business practices "are consistent with a pattern of false advertising and unfair competition in the origination of short term adjustable rate loans repeatedly engaged in by Defendant U.S. [Bank]." SAC ¶ 11. Specifically, plaintiffs allege that defendant encouraged consumers to obtain purchase money financing using complicated mortgage instruments that were difficult to understand, and that defendant continued to do so despite complaints from consumers that they did not understand their loans. Id. Moreover, plaintiffs allege that defendant marketed loan products to consumers by emphasizing low initial monthly payments while misrepresenting

the later increase in the monthly payments that would result at the expiration of the "teaser" rate. Id. As a result of defendant's conduct, plaintiffs allege that they "were unable to understand how their loan actually functioned." SAC ¶ 17. Reading the complaint liberally, plaintiffs have satisfied the section 5 requirements: plaintiffs have alleged substantial injury; there is no evidence of any countervailing benefit to consumers or competition that outweighs the harm to plaintiffs; and given the allegedly misleading loan instruments and practices, plaintiffs purportedly could not have avoided such injury. Accordingly, plaintiffs have alleged a viable claim under the unfair prong of the UCL.

In sum, if characterized as a TILA claim, plaintiffs' UCL cause of action is preempted by TILA and therefore time-barred. It furthermore fails to state a claim for a violation of the UCL's fraudulent and unlawful prongs. Nevertheless, plaintiffs have alleged a cause of action under the unfair prong of the UCL.

**2.    HOLA Preemption**

Next, the parties dispute whether the Home Owners' Loan Act ("HOLA") applies to U.S. Bank, a national association. Plaintiffs contend that HOLA only applies to federal savings associations, and because U.S. Bank is not a federal savings association, HOLA does not apply. Defendant U.S. Bank, on the other hand, argues that HOLA still applies in this case because U.S. Bank is the successor-in-interest to Downey with respect to plaintiffs' loan, and Downey was a federal savings association.

Plaintiffs are correct that HOLA governs federal savings associations, while the Office of the Comptroller of the Currency ("OCC") is charged with supervision of national banks and implementation of the National Bank Act ("NBA"). See NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co., 513 U.S. 251, 256 (1995). The OCC is authorized to issue rules and regulations as necessary to preserve the purpose and sound operation of the national banking system." Aguayo v. U.S. Bank, 2009 WL 3149607, *3 (S.D. Cal. 2009) (citing 12 U.S.C. § 93a; 69 Fed. Reg. 1904, 1907 (January 13, 2004)). Included in this authority is the power to interpret state law preemption under the NBA. Aguayo, 2009 WL 3149607 at 3 (citing 12 U.S.C. § 43). OCC regulations carry the same weight as federal

9

statutes when considering questions of state law preemption. Id. (citing <u>Hillsborough County v. Automated Med. Labs., Inc.</u>, 471 U.S. 707, 713 (1985)). The OCC interprets the preemptive scopes of the National Bank Act ("NBA") and HOLA as having the same effect:

> The extent of Federal regulation and supervision of Federal savings associations under the Home Owners' Loan Act is substantially the same as for national banks under the national banking laws, *a fact that warrants similar conclusions about the applicability of state laws* to the conduct of the Federally authorized activities of both types of entities . . . . If preemption is to be construed in the same way under the NBA as the HOLA, then the test for preemption should also be the same.

<u>Aguayo v. U.S. Bank</u>, 2009 WL 3149607, 7 (S.D. Cal. 2009) (citing 69 Fed. Reg. at 1912 n. 62) (emphasis added).

Furthermore, as discussed below, the regulations applicable to national banks regarding preemption of disclosure claims are almost identical to those applicable to federal savings associations. Accordingly, regardless of U.S. Bank's status as a national association, the preemption analysis remains the same.

There are three ways in which Congress may preempt state law: (1) Congress can expressly state its intent to preempt state law; (2) preemption may be inferred when federal regulation in a particular field is so pervasive as to reasonably imply that Congress left no room for supplemental state regulation; and (3) preemption occurs when state law actually conflicts with federal law. <u>Bank of Am. v. City and County of S.F.</u>, 309 F.3d 551, 558 (9th Cir. 2002).

Although there is a strong presumption against federal preemption of state law governing historic police powers, the Supreme Court has held that the presumption does not apply when state regulation occurs in an area where there has been a history of significant federal presence. <u>United States v. Locke</u>, 529 U.S. 89, 108 (2000).

> "Congress has legislated in the field of banking from the days of <u>M'Culloch v. Maryland</u>, 17 U.S. 316 (1819), creating an extensive federal statutory and regulatory scheme." <u>Bank of Am.</u>, 309 F.3d at 558. Specific to this case, Congress enacted the Home Owners' Loan Act of 1933 ("HOLA") to charter savings associations under federal law, at a time when record numbers of home loans were in default and a staggering number of state-chartered savings associations were insolvent. <u>Id.</u> at 559. HOLA was designed to restore public confidence

> by creating a nationwide system of federal savings and loan associations to be centrally regulated according to nationwide "best practices." Fid. Fed. Sav & Loan Ass'n v. de law Cuesta, 458 U.S. 141, 160-61 (1982). We have described HOLA and its following agency regulations as a "radical and comprehensive response to the inadequacies of the existing state system," and "so pervasive as to leave no room for state regulatory control." Conference of Fed. Sav. & Loan Ass'ns v. Stein, 604 F.2d 1256, 1257 (9th Cir. 1979), aff'd 445 U.S. 921. "[B]ecause there has been a history of significant federal presence in national banking, the presumption against preemption of state law is inapplicable." Bank of Am., 309 F.3d at 559 (internal quotation marks omitted).

Silvas, 514 F.3d at 1004-05.

Through HOLA, Congress gave the Office of Thrift Supervision ("OTS") broad authority to regulate the field. 12 C.F.R. § 560.2(b) provides an explicit list of state laws that are preempted by HOLA. State laws involving the following areas are particularly relevant to the instant case:

> (5) Loan-related fees, including without limitation, initial charges, late charges, *prepayment penalties*, servicing fees, and overlimit fees;
>
> (9) *Disclosure and advertising*, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants.[4]

---

[4] The regulations applicable to national banks pursuant to the National Bank Act are substantially the same as those set forth under HOLA. 12 C.F.R. § 34.4 provides:

(a) Except where made applicable by Federal law, state laws that obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized real estate lending powers *do not apply to national banks*. Specifically, a national bank may make real estate loans under 12 U.S.C. § 371 and § 34.3, without regard to state law limitations concerning:

   (1) Licensing, registration (except for purposes of service of process), filings, or reports by creditors;

   (2) The ability of a creditor to require or obtain private mortgage insurance, insurance for other collateral, or other credit enhancements or risk mitigants, in furtherance of safe and sound banking practices;

   (3) Loan-to-value ratios;

   (4) The terms of credit, including schedule for repayment of principal and interest, amortization of loans, balance, payments due, minimum payments, or term to maturity

12 C.F.R. § 560.2(b) (emphasis added).

As guidance in applying 12 C.F.R. § 560.2, the OTS provided a comprehensive framework for analyzing whether HOLA preempts a given state law.  First, a court must determine whether the type of law in question is listed in paragraph (b).  If so  the law is preempted and the analysis ends there.  If, however, the law is not listed in paragraph (b), the court must determine whether the law "affects lending."  If it does, then  there is a presumption that the law is preempted.  This presumption can be rebutted only if the law is clearly shown to fit within the purview of paragraph (c).  Paragraph (c) lists state laws which HOLA does not preempt, including contract and commercial law, real property law, homestead laws, tort law, criminal law, and any other law that the OTS determines furthers a vital state interest, and either only incidentally affects lending operations, or is not otherwise contrary to the purposes expressed in paragraph (a).  Paragraph (c) should be

---

of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;

(5) The aggregate amount of funds that may be loaned upon the security of real estate;

(6) Escrow accounts, impound accounts, and similar accounts;

(7) Security property, including leaseholds;

(8) Access to, and use of, credit reports;

(9) *Disclosure and advertising*, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents;

(10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages;

(11) Disbursements and repayments;

(12) Rates of interest on loans . . . .

12 C.F.R. § 34.4 (emphasis added).

interpreted narrowly, with any doubt resolved in favor of preemption. OTS, Final Rule, 61 Fed. Reg. 50951, 50966-67 (Sept. 30, 1996).

Turning to plaintiffs' complaint with the above analysis in mind, plaintiffs' UCL claim falls squarely within paragraphs (b)(5) and (b)(9) of section 560.2. Plaintiffs allege that U.S. Bank engaged in the following conduct: (1) marketing Hybrid ARM loans despite receiving numerous complaints from consumers that they did not understand their loan and that the loan terms had been misrepresented to them; (2) making misrepresentations regarding borrowers' prepayment penalties; and (3) marketing complicated loan products by emphasizing low initial monthly payments and misrepresenting the later increase in the monthly payments that would result at the expiration of the "teaser" rate. SAC ¶ 11. This conduct involves prepayment penalties, disclosures, and advertising related to plaintiffs' loan, all of which are addressed in §§ 560.2(b)(4) and (b)(9). Accordingly, the court finds that plaintiffs' claim is preempted by HOLA.

## CONCLUSION

In sum, if characterized as a TILA claim, plaintiffs' claim is time-barred. If characterized as a UCL claim, it fails to state a claim under the unlawful and fraudulent prongs of the UCL; however, plaintiffs' claim does state a cause of action under the unfair prong. Nevertheless, the SAC is preempted by HOLA and as a result, any amendment would be futile. Accordingly, defendant's motion to dismiss is GRANTED and the SAC is dismissed WITH PREJUDICE as to defendant U.S. Bank (erroneously sued as U.S. Bancorp, f/k/a Downey Savings and Loan Corporation).

The case management conference continued to January 14, 2010, at 2:00 p.m. shall go forward with plaintiff and remaining defendant Investors Trust, although it is not clear whether that defendant has been served with the complaint and summons.

**IT IS SO ORDERED.**

Dated: December 22, 2009

PHYLLIS J. HAMILTON
United States District Judge